UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

ALLEN SANCHEZ and
TISHA SANCHEZ,　　　　　　　　　　　　　　　　　Case no. 15-11463 ts7

　　　　Debtors.

**<u>MEMORANDUM OPINION</u>**

Before the Court is Debtors' motion to sanction North Central Solid Waste Authority ("NCSWA") for violating the discharge injunction. Debtors allege NCSWA violated the injunction when it discontinued Debtors' trash service, refused to reinstate it, and demanded that Debtors reaffirm the pre-petition debt. Although aware of the motion, NCSWA did not respond to it. For the reasons below, the Court finds NCSWA violated the discharge injunction and should be sanctioned.

I.　　FACTS

Debtors live in San Juan Pueblo, a Native American pueblo in a rural part of northern New Mexico. Debtors filed this Chapter 7 bankruptcy case on June 1, 2015. They listed NCSWA as a general unsecured creditor with a claim of $880, representing several years of unpaid bills. NCSWA was given notice of the bankruptcy filing.

NCSWA provides trash service to Santa Juan Pueblo residents pursuant to a Joint Powers Agreement (the "Agreement") among the County of Rio Arriba, the City of Espanola, the Santa Clara Pueblo, and the San Juan Pueblo. The Agreement was made under the authority of the Joint Powers Agreement Act, N.M.S.A. 1978 § 11-1-1, *et seq.*, and the Solid Waste Act, N.M.S.A. 1978 § 74-9-1, *et seq.* (the "SW Act"). The Agreement provides that NCSWA is not a "waste authority"

as defined in the Solid Waste Authority Act, N.M.S.A. 1978 § 74-10-1, *et. seq.* (the "SW Authority Act").

Prior to the bankruptcy filing, NCSWA provided Debtors with trash pick-up service. When Debtors signed up for the service, they paid a $150 deposit. NCSWA gave Debtors a trash bin. The monthly charge for the service was about $18.

As a joint venture of various local and tribal governmental units, NCSWA is a governmental unit, not a private enterprise. *See* § 101(26)[1] (governmental unit includes, inter alia, a department, agency, or instrumentality of a state, municipality or other foreign or domestic government). Its function—curbside trash pick-up—is a utility service within the meaning of 11 U.S.C. § 366. *See, e.g., In re Oaks,* 2012 WL 5717940 (Bankr. N.D. Ill. 2012) (treating trash pick-up as a utility service); *In re Spansion, Inc.*, 2010 WL 2905001 (Bankr. D. Del. 2010) (same).

The Court entered its standard discharge order on September 8, 2015. The debt to NCSWA for unpaid prepetition trash service was discharged on that date.

On or about November 25, 2015, NCSWA removed the trash bin from Debtors' property and discontinued service. Debtors filed a report with the Rio Arriba County Sheriff, reporting the trash bin as stolen.

On November 30, 2015, Mr. Sanchez visited NCSWA's office to pay his bill. He paid $150 for services provided between the petition date and December 31, 2015. During that visit, NCSWA manager Gino Romero threatened to place a lien on the Debtors' house unless they signed an agreement reaffirming the discharged debt. The agreement required Debtors to pay $78.54 a month for twelve months in addition to the regular monthly payment of $18. Mr. Sanchez signed the agreement. Despite this, NCSWA never restored service to the Debtors.

---

[1] Unless otherwise noted, all statutory references are to 11 U.S.C.

On December 11, 2015, Debtors reopened their bankruptcy case and filed the Motion. Debtors served the Motion, together with a notice of the 21-day deadline to object, on NCSWA by mailing them to: (1) Bernardino Chavarria, Chairman of the Board of Directors, North Central Solid Waste Authority, 1101 Industrial Park Rd., Española, NM 87532; (2) North Central Solid Waste Authority, Attn: Manager Gino Romero, 1101 Industrial Park Rd., Española, NM 87532; and (3) New Mexico Attorney General, Attn: Litigation Group, P.O. Drawer 1508, Santa Fe, NM 87504. Service was sufficient.

Five days after Debtors filed the Motion, they received a letter from NCSWA stating their account had been closed "due to the bankruptcy." The letter included a copy of the first page of the Motion and a check for $150, presumably a refund of the November 30, 2015 payment. NCSWA also directed Debtors to submit a new application and pay a $50 security deposit. NCSWA ordinarily requires a $25 deposit for new customers.

Debtors did not submit a new service application or pay a new deposit. NCSWA has not returned Debtors' trash bin or picked up their trash since before November 25, 2015. Debtors have about 20 bags of trash in their back yard. They cannot remove the trash themselves because their truck needs a new transmission. Ms. Sanchez contacted two private trash removal services, but neither provided service to them.

There is no evidence that NCSWA's prepetition debt was or could be secured by a lien. The SW Authority Act gives "waste authorities" the right to impose liens for unpaid trash fees, but NCSWA is not a "waste authority." Nothing in the Agreement, NCSWA's bylaws, or the SW Act gives NCSWA the right to a lien. The bylaws simply provide that if NCSWA's conditions are not met, service may be discontinued.

NCSWA did not object or otherwise respond to the Motion. The deadline to object expired January 4, 2016. The Court held a hearing on the Motion on January 19, 2016. NCSWA did not appear.

Debtors incurred $3,800 in attorney fees filing the Motion and attending the January 19, 2016 hearing.

## II. DISCUSSION

### A. Utility Companies and the Bankruptcy Code.

Unlike most service providers, public utility companies often hold monopoly or quasi-monopoly power. Utilities that provide gas, electricity, water, and sewer service, for example, typically are the only source of those essential services. Because their services are both needed and unavailable elsewhere, utilities can easily pressure debtors to pay their pre-petition debt or lose service.

One response to this situation was the addition of § 366 to the Bankruptcy Code, which prohibits utilities from discontinuing services in response to a bankruptcy filing while providing reasonable assurance that utilities will be paid for post-petition service.

> Section 366 of the Bankruptcy Code recognizes the monopoly powers of most utilities who provide services such as electricity, water and gas. Unlike other creditors, who usually may decline to do business with the debtor after bankruptcy provided they do not violate some other provisions of the Code, a public utility is required to continue to provide service to the debtor after a bankruptcy case is commenced. Without section 366, a debtor might well be unable to obtain essential services.

3 Collier on Bankruptcy, ¶ 366.01 (16th ed.). Section 366 "strike[s] a balance between the general right of a creditor to refuse to do business with a debtor post-petition and the debtor's need for utility service." *In re Martinez,* 504 B.R. 722, 729 (Bankr. D.P.R. 2014).

Refusing to provide utility service is not a per se violation of the Bankruptcy Code. For example, many cases have upheld a utility company's right to discontinue service where there is evidence of equipment tampering or unauthorized use. *See, e.g., In re Crome,* 2008 WL 5645100, \*3 (Bankr. N.D. Ill. 2008) (collecting cases and holding that the electric company's refusal to reinstate service after debtor filed bankruptcy did not violate §§ 362(a) or 366 because of debtor's pre-petition tampering); *In re Parks,* 2008 WL 2003163, \*4 (Bankr. N.D. Ohio 2008) ("no one disputes that a utility can refuse service … for tampering or unauthorized use" without violating the stay).

Similarly, utilities can discontinue service post-petition without violating the Bankruptcy Code if the debtor fails to pay for post-petition service. *In re Martinez,* 504 B.R. 722, 731 (Bankr. D. Puerto Rico 2014); *In re Jones,* 369 B.R. 745, 749 (1st Cir. BAP 2007) ("[F]ailure to make post-petition payments … allows for termination" of service).

In the absence of equipment tampering, service theft, or failure to pay for post-petition service, most courts have held that sole-source utilities may not discontinue service post-petition without violating the automatic stay. *See, e.g., In re Smith,* 170 B.R. 111, 116 (Bankr. N.D. Ohio 1994) ("In view of the fact that GTE intentionally disconnected the Smiths' telephone service after receiving notice [of the bankruptcy], the Court finds that GTE willfully violated the automatic stay."); *In re Tarrant,* 190 B.R. 704, 712 (Bankr. S.D. Ga. 1995) (the refusal to restore utility service was an act to collect a prepetition debt and violated the automatic stay); *In re Rivera,* 511 B.R. 6, 8 (Bankr. D.P.R. 2014) (defendant violated the stay by, inter alia, discontinuing water service); *In re Lanford,* 10 B.R. 129 (Bankr. D. Minn. 1981) (disconnecting telephone service violated the automatic stay).

B.  Utility Companies and the Discharge Injunction.

Sections 362(a) and 366 only apply while a bankruptcy case is pending. Where, as here, a discharge has been entered and the case closed, the primary restriction on utility companies' dealings with former debtors is the discharge injunction of § 524(a)(2).[2]

1.  The Discharge Injunction. Section 524(a)(2) provides that a bankruptcy discharge:

> operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

In other words, the discharge injunction "prohibits efforts to collect a [prepetition] debt *as a personal liability of the debtor*[.]" *In re Paul,* 534 F.3d 1303, 1309 n. 6 (10th Cir. 2008) (emphasis in original) (citing 11 U.S.C. § 524(a)).

There is no private right of action under § 524(a)(2) when a creditor violates the discharge injunction. *In re Otero,* 498 B.R. 313, 319 (Bankr. D.N.M. 2013) (surveying the case law). The remedy lies in contempt proceedings, in which the Court may assess sanctions pursuant to § 105. *Paul,* 534 F.3d at 1306-1307 ("Under 11 U.S.C. § 105(a), bankruptcy courts have the equitable power to enforce and remedy violations of substantive provisions of the Bankruptcy Code, including in particular the discharge injunction in § 524(a)(2)… Thus, a bankruptcy court may

---

[2] Some courts have held that § 525(a), which prohibits governmental units from discriminating against debtors when deciding whether to "deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant. . . ." restricts a utility's ability to discontinue service post-discharge. *See, e.g., In re Webb*, 38 B.R. 541, 545 (Bankr. E.D. Pa. 1984) (while implying that § 525(a) governed a utility company's post-petition refusal to provide service, the court held that no violation occurred because the refusal was based on debtor's utility equipment tampering, not his bankruptcy filing). Other courts have been unwilling to read § 525(a) so broadly. *See, e.g., Rees v. Employment Security Comm. Of Wyo.*, 61 B.R. 114 (Bankr. D. Utah 1986) (collecting cases on the scope of § 525(a) and adopting a narrow construction based on the legislative history and circuit court decisions). The Court need not rule on the issue.

-6-
Case 15-11463-t7    Doc 28    Filed 02/03/16    Entered 02/03/16 11:23:57 Page 6 of 10

sanction a party for violating the discharge injunction…."). *See also Bessette v. Avco Financial Services, Inc.,* 230 F.3d 439, 445 (1st Cir. 2000) (collecting cases for the proposition that sanctions are the generally recognized remedy).

2. <u>The Objective Standard for Determining Violations</u>. Certain actions, such as collection calls, are facially impermissible and plainly prohibited by § 524(a)(2). *In re Montano,* 488 B.R. 695, 708 (Bankr. D.N.M. 2013) (listing facial violations). Other actions that are facially permissible can nevertheless violate the discharge injunction if the effect of the actions is to coerce payment of discharged debts. *Paul,* 534 F.3d at 1308 ("Notwithstanding the facial permissibility of a[n] … action taken by a creditor vis a vis a discharged debtor, a violation of § 524(a)(2) may still be found if the debtor proves 'the creditor acted in such a way as to 'coerce' or 'harass' the debtor improperly,' *i.e.,* so as to obtain payment of the discharged debt.") (quotations omitted). "The inquiry is objective; the question is whether the creditor's conduct had the practical, concrete effect of coercing payment of a discharged debt[.]" *Id. See also In re Mahoney,* 368 B.R. 579, 589 (Bankr. W.D. Tex. 2007) (under the objective standard, "for any act to count as an act that violates the discharge, there must be evidence of an effective connection between the conduct of the creditor and the collection of the debt").

Bad faith is not required for an action to be coercive. *Paul,* 534 at 1308. "By the same token," any error or wrongdoing by the creditor will not warrant sanctions "if the objective effect is not to coerce payment of a discharged debt." *Id.*

3. <u>NCSWA Violated the Discharge Injunction</u>. NCSWA's conduct before receiving the Motion and notice clearly violated § 524. NCSWA discontinued service post-discharge and threatened to place a lien on Debtors' house if they refused to pay the discharged debt. NCSWA did not resume service even after coercing Mr. Sanchez to sign an unenforceable,

quasi-reaffirmation agreement to repay the discharged debt.[3] The Court therefore concludes "NCSWA acted in such a way as to 'coerce' or 'harass' the debtor improperly,' … so as to obtain payment of the discharged debt." *In re Paul,* 534 F.3d 1303, 1309 n. 6 (10th Cir. 2008). *See also In re Palazzola,* 2011 WL 3667624 at *10 (Bankr. N.D. Ohio 2011) (debtors stated a cause of action under § 524 where the City of Toledo allegedly disconnected water service to their house post-discharge and refused to reinstate the service unless their pre-petition water bill was paid).

NCSWA's actions after receiving the Motion and notice are more ambiguous. It could well be that NCSWA's return of the $150 payment and the invitation to submit a new service application were attempts to restore service without collecting the discharged debt. Because NCSWA did not respond to the Motion or appear at the hearing, it is difficult to know. The Court believes that Debtors should have taken NCSWA up on its proposal and determined whether the problem could have been resolved. Nevertheless, whether or not NCSWA is now willing to restore service without seeking to collect the pre-petition debt, NCSWA's actions before it received the Motion violated the discharge injunction.

C.   Sanctions.

"In cases in which the discharge injunction was violated willfully, courts have awarded debtors actual damages, punitive damages and attorney's fees." Collier on Bankruptcy (16th ed.) ¶ 524.02[2][c], citing *In re Hardy*, 97 F.3d 1384 (11th Cir. 1996). *See also In re Culley*, 347 B.R. 115 (10th Cir. BAP 2006) (upholding award of actual damages, attorney fees, and punitive damages as a sanction for violating the discharge injunction); *Paul,* 534 F.3d at 1306 (bankruptcy courts can impose sanctions for violating the discharge injunction); *In re Otero,* 498 B.R. 313, 321

---

[3] The agreement is unenforceable because, inter alia, it was executed after the discharge was entered. *See In re Kirk,* 2014 WL 1248040, *1 (Bankr. D.N.M. 2014) ("case law is nearly universal that post-discharge reaffirmation agreements are barred").

(Bankr. D.N.M. 2013) (awarding actual damages, attorney fees, and punitive damages against creditor for violating § 524).

The Court finds NCSWA's conduct violated the discharge injunction and was willful. Debtor is entitled to actual damages and attorney fees. The amount of actual damages is not entirely clear. Based on the Affidavit in Support of Damages filed January 14, 2016, doc. 21, the Court concludes it is appropriate to award $150 in actual damages, which represents the value of the trash bin NCSWA removed from the Debtor's property. Debtor is also entitled to $3,800 in attorney fees.

The Court will therefore enter an award in the Debtor's favor as follows:

| | |
|---|---|
| Actual damages: | $ 150 |
| Attorney Fees: | $ 3,800 |
| Total: | $ 3,950 |

The Court will impose additional damages if NCSWA continues to violate the discharge injunction, or if NCSWA refuses to pick up the trash that has accumulated at the Debtor's residence.

### III. CONCLUSION

Debtor proved that NCSWA willfully violated the discharge injunction when it refused to provide trash service, refused to return Debtors' trash bin, forced Debtor to sign a reaffirmation agreement, and threatened to place a lien on the Debtors' house.

A separate sanctions order will be entered.

_[signature]_
Honorable David T. Thuma
United States Bankruptcy Judge

Entered: February 3, 2016

Copies to:

Tami L Schneider
P.O. Box 23563
Santa Fe, NM 87502

North Central Solid Waste Authority
Attn: Manager Gino Romero
1101 Industrial Park Rd.
Española, NM 87532

Bernardino Chavarria
Chairman of the Board of Directors, NCSWA
1101 Industrial Park Rd.
Española, NM 87532